UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JPMORGAN CHASE &
COMPANY,

       Plaintiff,

                                        CASE NO. 05-CV-74455-DT
                                        JUDGE GEORGE CARAM STEEH
                                        MAGISTRATE JUDGE PAUL J. KOMIVES

  v.

SANDRA E. PIERCE,

       Defendant.
                                         /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT
TO SUBPOENA ISSUED UNDER FED. R. CIV. P. 45 (Doc. Ent. 28)**

**I.    OPINION**

**A.    Background**

On April 30, 1999, Bank One Corporation employee Sandra E. Pierce signed an award agreement under BankOne Corporation Stock Performance Plan. Doc. Ent. 1 at 21 (the 1st agreement [version effective February 16, 1999]). Pierce signed another award agreement on June 22, 2000. Doc. Ent. 1 at 31 (the 2nd agreement [version effective February 15, 2000]). The terms and conditions of 1999 and 2000 stock option awards, specifically the "Termination of Employment" section, were amended effective April 1, 2001. Doc. Ent. 1 at 29, 35, 40.

The Bank One Corporation stock performance plan was amended and restated effective February 20, 2001 and was executed on December 17, 2001. Doc. Ent. 36-4 at 14-23. On August 14, 2001, Pierce signed another award agreement. Doc. Ent. 1 at 42 (the 3rd agreement [version effective February 9, 2001]). She signed another such agreement on July 5, 2002. Doc.

Ent. 1-2 at 5 (the 4th agreement [version effective April 16, 2002]). She entered into another such agreement during 2003. Doc. Ent. 1 at 9 ¶ 24, Doc. Ent. 1-2 at 15 (the 5th agreement [version effective August 15, 2003]).

Allegedly, from February 2004 into December 2004, defendant exercised stock options. On December 10, 2004, she resigned from JPMorgan Chase. She then became Chief Executive Officer and President of Michigan for Charter One Bank, N.A. Doc. Ent. 1 at 2 ¶ 2.

On or about January 27, 2005, plaintiff determined that defendant's new employment "would pose a competitive risk prejudicial to the interests of JPMorgan Chase[.]" Doc. Ent. 1 at 15 ¶ 49. JPMorganChase Executive Vice President Saundra Schrock sought Human Resources Director John Farrell's approval to demand repayment. Doc. Ent. 29-3 at 3. In a letter dated February 14, 2005, Elois Gries Cookson, JPMorgan Chase Senior Counsel, sent correspondence to defendant "notifying her that she was in breach of her restrictive covenants[,]" and seeking reimbursement of Restricted Stock Awards and Stock Option Awards. Doc. Ent. 1 at 16 ¶ 50. On July 25, 2005, Farrell confirmed his January 2005 adoption of Schrock's January 27, 2005 recommendation. Doc. Ent. 29-4 at 2. On May 12, 2005, John C. Cashen (defendant's former counsel) sent a letter to Cookson contending that (1) "[t]he agreement has not been violated[,]" (2) "[t]he agreement is an unenforceable restraint on competition[,]" (3) "[t]he employee choice doctrine is inapplicable[,]" and (4) "[t]he claw-back provision is unenforceable as a penalty." Doc. Ent. 30-3 at 2-6.

On November 22, 2005, plaintiff JPMorgan Chase & Co., formerly known as Bank One Corporation, filed the instant complaint against defendant Sandra E. Pierce, described as a former senior office of JPMorgan Chase. Doc. Ent. 1 ¶ 1. The complaint describes defendant's position and duties at JPMorgan Chase, stock award agreements, gains reaped from stock awards

just before resignation, defendant's resignation from JPMorgan Chase, and violation of restrictive covenants against competition. Doc. Ent. 1 ¶¶ 10-53. The sole count in the complaint is breach of contract. Doc. Ent. 1 ¶¶ 54-63. Among other forms of relief, plaintiff seeks compensatory, consequential and/or restitutionary damages, as well as reasonable costs and attorney fees.

Plaintiff answered the complaint on January 5, 2006. Plaintiff defends the complaint, in part, by contending that "[t]he non-competition provision is unenforceable[]" and "[t]he payment purportedly required by the stock award agreements is unenforceable as a penalty." Furthermore, she claims she "was not provided with the alleged formal determination on or about January 27, 2005 . . . that [her] employment at Charter One would pose a competitive risk prejudicial" to plaintiff's interests. Defendant requests dismissal of the action with prejudice, as well as an award of costs and attorney fees. Doc. Ent. 3 at 10.[1]

## B. Plaintiff's Motion to Compel Production of Documents Pursuant to Subpoena Issued under Fed. R. Civ. P. 45

**1.** Defendant was deposed on November 30, 2006 and again on February 1, 2007. Doc. Ent. 31-8 at 2-3; Doc. Ent. 28-3 at 13-16; Doc. Ent. 30-4 at 2-6; Doc. Ent. 35-2 at 2-4. During defendant's February 1, 2007 deposition, plaintiff's counsel questioned defendant about an apparent inconsistency between her testimony (that she was not in charge of retail operations)[2]

---

[1] This case has been referred to me to conduct pretrial matters. Doc. Ent. 17.

[2] In her response brief, defendant notes that "Ms. Pierce was not employed in a substantially similar function at the time [the letter was written], thus making Plaintiff's claw-back effort inappropriate." Doc. Ent. 30 at 7.

and the content of a May 12, 2005 letter from defendant's former counsel Cashen[3] to JPMorgan Chase (which claims that defendant "is in charge of all operations for such bank within the State of Michigan, not simply retail, period, end quote."). Doc. Ent. 30-4 at 3 (pp. 172-174).

Plaintiff's counsel asked defendant "[w]hen you read this letter either before it was sent or after did you raise to Mr. Cashen that it contained this inaccuracy?" When she began to answer, defense counsel interrupted and raised the issue of attorney client privilege. Plaintiff's counsel stated:

> Well, I'm not in a position sitting here in the deposition to recall or give you some sort of final answer on what the scope – first of all, whether her answer to this question even would be a waiver of the attorney-client privilege, and if it is, what the scope of that would be. I think it's an appropriate question. I don't think it calls for privileged information. You, of course, can elect to instruct your client not to answer it. I don't think that it would lead to some sort of broad waiver to the attorney-client privilege, but I guess you're asking me to come up with an off the top of my head legal opinion on the matter which I'm not comfortable or willing to do. So I guess I will leave it to you to determine whether or not you want her to answer that question or not.

Doc. Ent. 30-4 at 3 (p. 175). After conferencing with his client, defense counsel stated:

> I also advised her of the danger that exists when you partially waive the privilege that the position may be taken that it therefore waives the privilege for all purposes. . . . I gave her the option to waive the privilege on this subject, meaning all discussions with Mr. Cashen on this particular subject as long as, number one, that does not waive the privilege with respect to other matters unrelated to this issue that are personal matters that she may have consulted with Mr. Cashen on, and . . . the privilege that exists with respect to communications that she and I have had.
> Now, my proposal to you is along those lines that you can inquire into all discussions between her and Mr. Cashen on the subject of this lawsuit, but that it doesn't therefore open the door wider than that.

---

[3]The docket indicates that Cashen was terminated as defense counsel on September 13, 2006. Kienbaum and Lori L. Rogala filed notices of appearance on defendant's behalf on November 9, 2006. (Doc. Ent. 11 and 12).

Doc. Ent. 30-4 at 3-4 (pp. 175-176). Plaintiff's counsel agreed with those limitations. In response to defense counsel's question, "[a]re you comfortable with that[,]" defendant stated, "I'm comfortable." Doc. Ent. 30-4 at 4 (pp. 176). In her testimony, she referred to "the conversation [she] had with John before, after, during the letter." Doc. Ent. 30-4 at 4 (pp. 177-178). *See also* Doc. Ent. 30-4 at 6 (pp. 184-185).

**2.** On or about February 26, 2007, plaintiff's counsel served Bodman LLP with a subpoena for document production on the basis that "[d]uring her deposition . . . Ms. Pierce waived the attorney client privilege as to the subject matters of this lawsuit." Doc. Ent. 28-3 at 18-25. Specifically, the subpoena requests:

1. Please produce all documents, e-mails, writings or other communications, ever sent to or received from (a) Sandra Pierce or (b) Charter One and that discuss or relate to, in any manner whatsoever, the Stock Option Award Agreements with Sandra Pierce (the 'subject Agreements') at issue in this case, the demands and eventual litigation filed by JPMorgan Chase, or any other matter related to her prospective or actual employment with Charter One including without limitation her role at the bank and amendment of her employment agreement.
2. Please produce all documents, e-mails, writings, or other correspondence or communications, between Ms. Pierce and Charter One that discuss, in any way, the subject Agreements entered into between Ms. Pierce and JPMorgan.
3. Please produce all documents, e-mails, writings, or other correspondence or communications between Ms. Pierce and Charter One that contain, reflect or relate to an offer of employment, or contain or relate to negotiations or discussions of the terms of Ms. Pierce's employment with Charter One.
4. Please produce copies of all documents reflecting or regarding conversations and communications, if any, that were between Ms. Pierce and the representatives, employees, or agents of JPMorgan, or between Ms. Pierce and any other individual or entity including Charter One, wherein the subject Agreements were discussed in any way.
5. Produce all documents relating to or regarding Pierce's resignation and departure from JPMorgan Chase.
6. Produce any documents, no matter how inconsequential, provided by or through Ms. Pierce, which in any fashion related to JPMorgan Chase or its

        business.
7.     Produce any draft, proposed and actual employment, non-compete, confidentiality, profit-sharing, or stock option award agreement between Ms. Pierce and Charter One.

Doc. Ent. 28-3 at 24-25.

On March 5, 2007, defense counsel Thomas G. Kienbaum wrote to plaintiff's counsel, stating that its "understanding of the waiver placed on the record is incorrect." Doc. Ent. 28-3 at 27-28. On March 12, 2007, John C. Cashen of Bodman LLP responded to plaintiff's counsel and, among other things, set forth a list of privileged documents in his file. Cashen stated: "The materials you seek are subject to the attorney-client and work-product privileges." Doc. Ent. 28-3 at 30-31.

**3.**     Currently before the Court is plaintiff's March 13, 2007 motion to compel production of documents pursuant to subpoena issued under Fed. R. Civ. P. 45. (Doc. Ent. 28). Plaintiff seeks an order "compelling Bodman to provide documents responsive to the subpoena to Chase within seven (7) days from the date of its Order." Doc. Ent. 28 at 7.

On March 16, 2007, defendant filed a response. Doc. Ent. 30. According to defendant, she "agreed to waive the attorney-client privilege with respect to conversations that she had with her attorney John Cashen regarding a letter that he wrote in May 2005 to Plaintiff JP Morgan Chase regarding Plaintiff's job functions." However, she contends, her "limited waiver [did not] constitute a waiver of the attorney-client privilege with respect to all communications that she had with Mr. Cashen regarding the entire lawsuit[.]" Doc. Ent. 30 at 2.

On March 27, 2007, defendant filed a declaration "in support of [her] opposition to Plaintiff's motion to discovery privileged communications between [her] and [her] then attorney, John Cashen." Doc. Ent. 32 ¶ 1. Plaintiff understood "that [she] was waiving the attorney-client

privilege only with respect to communications between Mr. Cashen and [her] about his May 12, 2005 letter – specifically, what [she] might have conveyed to him concerning [her] duties at Charter One Bank.  I did not intend to waive the attorney-client privilege on any broader basis and it was my understanding that Mr. Quick's inquiries concerning communications between Mr. Cashen and me would be limited in the fashion that I have stated.  Indeed, his inquiries were limited to that specific issue during the remainder of my deposition."  Doc. Ent. 32 ¶ 4.

In its March 30, 2007 reply, plaintiff argues that "[d]efendant broadly waived the attorney-client privilege as to all subject matters of this litigation[.]" Plaintiff further contends that "even if the Court were to consider Defendant's after-the-fact qualification, the subject matter of the letter involves the same issues about which Chase sought documents from Defendant's former counsel and therefore, the subpoena is clearly within the scope of Defendant's assertion that her waiver of the privilege was limited."  Doc. Ent. 35 at 5.

**C.      Applicable Law**

**1.**      Fed. R. Civ. P. 45(c)(3) sets forth ways in which the Court may quash or modify the subpoena.  In pertinent part it provides, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of privileged or other protected matter and no exception or waiver applies[.]"  Fed. R. Civ. P. 45(c)(3)(A)(iii).

**2.**      "The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents.  The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice.  Where an attorney's client is an organization, the privilege extends to those communications between attorneys and all

agents or employees of the organization authorized to speak on its behalf in relation to the subject matter of the communication." *Leibel v. General Motors Corp.*, 250 Mich.App. 229, 236, 646 N.W.2d 179, 183 (2002) (citing *Reed Dairy Farm v. Consumers Power Co.*, 227 Mich.App. 614, 618-619, 576 N.W.2d 709 (1998)). "[C]lients and their agents must disclose on request any relevant fact within their knowledge even if it incorporated a statement of that fact into a communication to the attorney." *Reed Dairy Farm*, 227 Mich.App. at 619-620, 576 N.W.2d at 712 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-396 (1981)).

**3.**     "The question of what constitutes a waiver of the attorney-client privilege is a question of law[.]" *Leibel*, 250 Mich. App. at 240, 646 N.W.2d at 185. "'[T]rue waiver is an intentional, voluntary act and cannot arise by implication. It has been defined as the voluntary relinquishment of a known right.[']". *Sterling v. Keidan*, 162 Mich. App. 88, 91, 412 N.W.2d 255, 256 (1987) (citing *Kelly v. Allegan County Circuit Judge*, 382 Mich. 425, 427, 169 N.W.2d 916 (1969)). *See also Franzel v. Kerr Manufacturing Co.*, 234 Mich. App. 600, 616, 600 N.W.2d 66, 74-75 (1999) (citing *Sterling*). *See also People v. Sullivan*, 231 Mich. App. 510, 516, 586 N.W.2d 578, 581 (1998) (inadvertence versus judgment error) (citing *Sterling*). "[I]nvoluntary disclosure through inadvertence or court orders in other jurisdictions does not constitute a voluntary waiver of the privilege[.]" *Leibel*, 250 Mich. App. at 232, 646 N.W.2d at 181.

**D.     Plaintiff's Motion to Compel Is Granted in Part and Denied in Part.**

**1.**     In the instant motion, the parties debate the scope of the "subject matter" waived by defendant during her deposition. According to plaintiff, "the subject of this lawsuit is whether Chase properly determined that Pierce violated the Agreements as a result of her employment at

8

Charter One," and "the subpoena served upon Bodman seeks documents that are 'subjects of this lawsuit,' including documents related to the stock option award agreements, and documents related to Pierce's employment at Charter One, including her job functions."  Doc. Ent. 28 at 6 ¶ 17.  Plaintiff argues that "[i]n light of Pierce's knowing and voluntary waiver of the attorney-client privilege between herself and Cashen as to matters that are 'subjects of this lawsuit,' Cashen should be compelled to produce the requested documents set forth in Chase's subpoena to Bodman."  Doc. Ent. 28 at 7 ¶ 19.

Defendant admits that "[p]laintiff's counsel was permitted to inquire into discussions between Ms. Pierce and Mr. Cashen concerning a letter written by Mr. Cashen to an in-house lawyer at JPMorgan Chase."  According to defendant, her "intent was to provide a waiver limited to attorney-client communications concerning the letter itself, and this was the extent to which Plaintiff's counsel utilized her waiver during the deposition."  Doc. Ent. 30 at 5.

With respect to the extent of her waiver, defendant contends that the "subject" waived here is Cashen's May 12, 2005 letter and "the basis of the information he recited therein."  According to defendant, "[i]t was contemplated that Plaintiff's counsel would be able to inquire only into discussions between Mr. Cashen and Ms. Pierce concerning the letter in order to gain an understanding of the position taken by Mr. Cashen at the time."  Defendant contends that intended subject was clearly "[d]iscussions between Mr. Cashen and Ms. Pierce concerning what she knew about he parameters of her job duties, and what he consequently had reason to know at the time he wrote the May 12, 2005 letter."  Doc. Ent. 30 at 9.  Defendant contends that the stipulation is narrow when taken in context.  Defendant characterizes plaintiff's counsel's deposition questions as "limited to conversations between Ms. Pierce and Mr. Cashen insofar as

9

they would be pertinent to the letter in question, reflecting the contemporaneous understanding of what the waiver covered[,]" and not as "questions of the kind a lawyer could ask if he thought the privilege had been totally waived[.]"  Defendant contends that the subpoena seeks information "well beyond the subject matter of the letter and certainly well beyond 'conversations between [Ms. Pierce] and Mr. Cashen.'"  Doc. Ent. 30 at 10.  Furthermore, defendant contends, the subpoena overreaches "by seeking documents related to Mr. Cashen's privileged communications with Charter One Bank, which was also his client."  Doc. Ent. 30 at 11.

In its reply, plaintiff contends, "[t]he record is clear that Chase's counsel refused to proffer a legal opinion of whether the attorney-client privilege would be waived and if so, the scope of that waiver, and instead left it up to Defendant and her counsel to determine whether she would answer the pending question."  Doc. Ent. 35 at 7-8.  Plaintiff claims that "[d]efendant had ample opportunity to insert the limitation it now seeks . . . by simply stating that the scope of the waiver would only include Defendant's discussions with Cashen regarding the May 12, 2005 letter[,]" and that the waiver was broad and included "all communications between Defendant and her former counsel concerning the subject matter of this lawsuit."  Doc. Ent. 35 at 8.  Relying upon *In re Powerhouse Licensing*, plaintiff contends that the May 12, 2005 letter "covers the heart of this litigation–whether Defendant breached the stock award agreements by virtue of accepting employment at Charter One Bank as its President and CEO of Michigan[,]" and "it is clear that the documents sought by Chase from Bodman, including documents related to the stock award agreements and documents related to Pierce's employment at Charter One, relate to the same subject matter as the letter and thus are subject to production."  Doc. Ent. 35 at

10

9.

**2.**     "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citing cases). "The scope of the waiver turns on the scope of the client's disclosure, and the inquiry is whether the client's disclosure involves the same 'subject matter' as the desired testimony." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) (citing *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255-256 (6th Cir. 1996)). "[I]t is well-established that 'voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.'" *Edwards v. Whitaker*, 868 F. Supp. 226, 229 (M. D. Tenn. 1994) (citing cases). "When a client offers his or her attorney's testimony as to a specific communication to the attorney, 'the privilege is waived as to all communications to the attorney on the same matter.'" *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (a diversity lawsuit) (citing *Kubiak v. Hurr*, 143 Mich.App. 465, 372 N.W.2d 341, 345 (1985)[4]).

**3.**     The hearing on this matter was scheduled for April 3, 2007. Doc. Ent. 33. On the date

---

[4]"It is only where the client offers his own or his attorney's testimony as to a specific communication to the attorney that the privilege is waived as to all communications to the attorney on the same matter. This is to ensure that the privilege is used only as an incidental means of defense and not as a means of attack. For the same reason, the client's offer of his own or his attorney's testimony to a party of any communication is a waiver as to the whole of that communication." *Kubiak v. Hurr*, 143 Mich.App. 465, 473, 372 N.W.2d 341, 345 (1985). *See also Alderman v. People*, 4 Mich. 414, 1857 WL 4017, *1 n.2 (1857) (citing *Hartford Fire Ins. Co. v. Reynolds*, 36 Mich. 502 (1877)) ("Disclosures to an attorney in the presence of an outside party are not privileged; and where the client has himself testified as to conversations with his attorney, it seems this may operate as a waiver of the privilege to that extent[.]").

set for hearing, I heard oral argument. Attorney Daniel D. Quick represented plaintiff, and attorney Thomas G. Kienbaum represented defendant.

During oral argument, plaintiff's counsel argued that a waiver of "discussions" should not be limited to verbal conversations. He further argued that defense counsel's reference during the deposition to caveats to the waiver, *see* Doc. Ent. 30-4 at 176, supports plaintiff's position that the scope of the waiver was broad. Also, defense counsel stated that even under a narrow interpretation of "discussions", the attorney client privilege would be waived as to all other communications regarding the same subject matter.

Defense counsel admitted that he has seen the file box of documents in Cashen's possession. Defense counsel argued that the subject matter was limited to the letter. If it had been broad, he argued, plaintiff's counsel would have asked questions on the subject intended to be waived. He also said he would be willing to produce e-mail regarding the May 12, 2005 letter. However, he stated that a literal interpretation of the word "discussions" would be limited to just that

The Sixth Circuit has stated that "subject matter can be defined narrowly or broadly." *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255 (6th Cir. 1996) (citing *In re Sealed Case*, 877 F.2d 976, 981 (D. C. Cir.1989)). "[W]e do not believe that the owner and president's waiver of the privilege by divulging the attorney's advice on several specific items of the marketing plan necessarily constitutes waiver as to the attorney's advice on the entire plan." *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255 (6th Cir. 1996). Relying on this case, defendant contends that "such waiver with respect to discussions between Ms. Pierce and her attorney, John Cashen, did not more broadly waive the privilege. Instead, the waiver was

specific to the subject matter of the item being discussed - why Mr. Cashen's letter date[d] May 12, 2006 contained the information it contained, and what Ms. Pierce had communicated to him."  Doc. Ent. 30 at 12.

Upon consideration, and consistent with my ruling from the bench, I conclude that defendant's waiver was not unlimited.  I interpret defendant's waiver as narrow in scope and conclude that it concerned discussions she had with Cashen regarding the subject matter in the May 12, 2005 letter.  The waiver permits production of copies of written communications that defendant sent to Cashen concerning the May 12, 2005 letter, whether prior to or after the letter's date.  The subpoena is not quashed but defendant's obligation to comply is limited consistent with my interpretation of plaintiff's waiver.

The resolution of this issue is a close question.  However, I am persuaded by defense counsel's argument that standards of fairness should be considered and by my conclusion that the Court should not be too summary when ruling on waivers of privilege.  *In re United Mine Workers of America Employee Ben. Plans Litigation*, 159 F.R.D. 307, 309 (D. C. Cir. 1994) ("The case law in this Circuit grants Magistrate Judge Kay the discretion to define the subject-matter of the disclosed documents narrowly to prevent the scope of the subject-matter waiver from being unduly broad."); *Goldman, Sachs & Co. v. Blondis*, 412 F.Supp. 286, 289 (N. D. Ill. 1976) (where complaint was based upon Securities Exchange Act of 1934 and a breach of contract, "[t]his narrow reading of the scope of the waiver will, in the court's judgment, promote the fairness which the partial disclosure qualification is designed to encourage while serving the compelling public policy considerations underlying the attorney-client privilege.").

**II.    ORDER**

Consistent with my April 3, 2007 ruling from the bench, plaintiff's motion to compel production of documents pursuant to subpoena issued under Fed. R. Civ. P. 45 (Doc. Ent. 28) is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten (10) days from the date of service of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: 4/4/07

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on April 4, 2007.
>
> s/Eddrey Butts
> Case Manager