UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JPMORGAN CHASE & CO.
f/k/a BANK ONE CORPORATION,

    Plaintiff,

vs.

Case No. 05-CV-74455
HON. GEORGE CARAM STEEH

SANDRA E. PIERCE,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION (#57)

Defendant Sandra Pierce moves for reconsideration of this court's July 5, 2007 Order granting plaintiff JPMorgan Chase & Co.'s motion for summary judgment on its breach of contract claim, denying Pierce's motion for summary judgment on the breach of contract claim, and entering judgment in favor of JPMorgan and against Pierce in the amount of $376,348.59.

JPMorgan sued its former Senior Vice President Sandra Pierce to recover compensation Pierce received from 1999 through 2003 under certain Stock Award Agreements before she left JPMorgan on December 10, 2004 to accept a position as Michigan President and CEO of Charter One Bank, N.A. beginning in January 2005. The Stock Award Agreements authorized JPMorgan to "claw back" stock award compensation Pierce received if she became employed by a JPMorgan competitor and "perform[ed] the same or substantially similar functions to those which [she] performed while employed by [JPMorgan] . . . in a manner which is or may reasonably be expected to be prejudicial to or in conflict with the interests of [JPMorgan]." JPMorgan Human Resources Director John

Farrell authorized a claw-back of Pierce's stock gains for breach of these non-compete covenants. JPMorgan demanded repayment of $376,348.59 from Pierce in February 2005, and filed this breach of contract action in federal court on November 22, 2005.

In resolving the cross-motions for summary judgment, the court applied Delaware contract law, reviewed the record evidence, and found that Farrell's claw-back decision was consistent with the language of the February 16, 1999 and February 20, 2001 Stock Performance Plans and Stock Award Agreements, was the product of a deliberative process, and was not otherwise the product of fraud, bad faith, or an abuse of reasonable discretion. Applying both an "arbitrary and capricious" and de novo standard of review, the court found JPMorgan was not contractually required to delay its claw-back decision for four to ten months after Pierce resigned to determine whether Pierce would ultimately be responsible for "retail" banking functions at Charter One, as she had been at JPMorgan. The court resolved other contractual interpretation arguments in favor of JPMorgan, and awarded JPMorgan its claimed $376,348.59 in contractual damages.

Pierce moves for reconsideration arguing the court erred in determining there was no material question of fact as to whether HR Director Farrell possessed the corporate authority to determine whether Morgan had breached the non-compete restrictive covenants. Pierce argues that, at minimum, the court erred in finding that Farrell possessed the authority to make decisions regarding 1999 and 2000 stock awards based on language found in 2001 through 2003 Award Summaries. Pierce also argues the court erred by interpreting the "lapse" of stock restrictions as not including a lapse of the restrictive non-compete covenants. Pierce further asserts that the court erred in deciding the contractual issue of whether JPMorgan was entitled to recoup all or part of the $53,125.05 compensation Pierce received under a February 15, 2000 Restricted Stock Award because, at best, the language of the Restricted Stock Award is ambiguous.

Generally, and without restricting the court's discretion, the court will not grant a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been mislead but also show that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3).

The court did not err in ruling that HR Director Farrell had been delegated the corporate authority to decide in January or February 2005 whether to seek reimbursement of Pierce's stock award compensation based on a breach of the non-compete covenants. Both the 1999 Plan and 2001 Plan authorized the Organization, Compensation, and Nominating Committee to delegate their decisional authority. On September 16, 2002, more than two years before HR Director Farrell made his decision, then Bank One[1] Board Chairman and CEO Jamie Dimon executed a "DELEGATION OF AUTHORITY WITH RESPECT TO STOCK AWARDS" expressly delegating decisional authority to "the Head of Human Resources" to determine whether any former employee "violated any restrictive covenant provisions under *any* stock award agreement issued pursuant to the Bank One Performance Plan[.]" (emphasis added). The court relied on the language of the August 14, 2001 and July 5, 2002 Stock Award Agreements as direct evidence that the Committee had delegated its decisional authority to the Board Chairman and CEO prior to Dimon's delegation of that same authority to HR Director Farrell on September 16, 2002. The court relied on the August 15, 2003 Stock Award as confirming that the Committee had in fact delegated its decisional authority to the Board Chairman and CEO prior to Dimon's September 16, 2002 Memo and Farrell's 2005 decision authorized under the 2002 Memo.

---

[1] Bank One is a predecessor of JPMorgan.

The fact that the 1999 and 2000 Stock Award Agreements did not contain language of a delegation of decisional authority from the Committee to the Board Chairman and CEO does not undercut the court's finding on the entire record that Board Chairman and CEO Dimon was in fact delegated decisional authority over *any* stock agreement before he made his delegation of authority to Farrell on September 16, 2002. As previously addressed, Maudlin v. Worldcom, Inc., 263 F.3d 1205 (10th Cir. 2001) held that a delegation of decisional authority after the decision had been made did not constitute a valid transfer of authority. Maudlin is factually distinguishable, and was decided under Texas law. Id. at 1213.

Pierce's reliance on American Telephone & Telegraph Co. v. Purcell Co., 606 So.2d 93 (Miss. Supr. Ct. Oct. 1, 1992) for the proposition that the court should only rely on corporate minutes as the best evidence of a proper delegation of authority is misplaced. First, Purcell was decided under Mississippi law, not Delaware law as is applicable here. Second, the Supreme Court of Mississippi has since clarified the holding in Purcell as simply requiring a corporation to prove that it was authorized to take particular action, not that corporate resolutions are the best evidence or mandatory proof. See Ford v. Destin Pipeline Co., L.L.C., 809 So.2d 573, 576 (Miss. Supr. Ct. Aug. 10, 2000). JRMorgan has met its burden of proving a proper delegation of decisional authority to HR Director Farrell. Pierce's argument that further discovery is required is not well taken.

Neither did the court err in interpreting the Plans, Stock Awards, and Summaries in concluding JRMorgan was entitled to recoup the entire $376,348.59. Under Delaware law, contract construction was for this court to decide as purely a question of law, including the resolution of any contractual ambiguities. Rhone-Poulenc v. Basic Chemicals Co. v. American Motors Ins. Co., 616 A.2d 1192, 1195-96 (Del. 1992); Comrie v. Enterasys Networks, Inc., 837 A.2d 1, 13 (Del. Ch. 2003). Pierce argues that the court could not

4

construe contractual language that Farrell himself failed to address. In drawing an analogy to ERISA cases in which the court is limited to considering determinations made by a plan administrator on the administrative record compiled during an administrative appeal, Pierce's argument is misplaced. See Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1190 (10th Cir. 2007) (recognizing that a district court's review of an ERISA administrator's decision is confined to the evidence and arguments in the administrative record, and that a court will look only to the rationales articulated by the administrator as set forth in the administrative record). While there are analogies to be drawn with ERISA decisions, this is not an ERISA action for which an administrative record was created; this action was decided under Delaware law, requiring the court to determine if JPMorgan's claw-back decision was consistent with the contract language and not otherwise the product of fraud, bad faith, or an abuse of reasonable discretion. Schwartz v. Century Circuit, Inc., 163 A.2d 793, 796 (Del. Ch. 1960); W.R. Berkley Corp. v. Hall, No. Civ. 03C-12-146WCC, 2005 WL 406348, *4 (Del. Super. Feb. 16, 2005) (unpublished); Hilton Hotels Corporation v. Dunnet, 275 F.Supp.2d 954, 967 (W.D. Tenn. 2003) (applying Delaware law). Pierce has failed to demonstrate the court erred in resolving any alleged contractual ambiguity, including any ambiguity related to the February 15, 2000 Restricted Stock Award. Pierce's argument regarding the "lapse" of stock restrictions merely presents the same interpretation issue already ruled upon by the court.

Pierce has failed to demonstrate palpable error. Accordingly, Pierce's motion for reconsideration is hereby DENIED.

SO ORDERED.

Dated: September 4, 2007

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 4, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk